People of the State of Illinois, this is Jamal Sharifpour, 2-08-512. On behalf of the Appellant, Mr. Thomas Lillian. On behalf of the Appellant, Mr. Cloyer Justice. Mr. Lillian, it's nice to see you still work. Good afternoon, Your Honors. May I please be part of the Council? Mr. Sharifpour is here challenging his conviction for attempt to aggravate criminal sexual assault upon a guilty plea. This case obviously has a long history in the trial in appellate courts. The original conviction was in a jury trial held in absentia back in 1990. That was vacated in 2001. The open plea that's subject to the challenge before this court now was entered later in 2001 after the defendant had been convicted at bench trial in another case. First time the case came to this court on appeal, it was remanded on a 604D basis. Second time it was remanded on a 605B admissions basis. I note that looking at the panel today, both those decisions were rendered by panels other than the judges. Then Your Honor is sitting on the case here today. It is back before this court, however, on essentially the same issues that were raised. The same substantive issues that the court did not reach in the last appeal, that being appeal 05-12-84. There are two issues. The first is more of what I would call a typical guilty plea challenge to the knowing involuntary nature of the plea. That was the subject of two evidentiary hearings in the past in this case. The second issue is the speedy trial issue, which was only, let's say, litigated in the trial court after the most recent remand. And the question of whether the original conviction in this case at the trial in absentia was void. On the first issue, the knowing involuntary nature of the plea. As I said, the original convictions were from 1990 in both this and the other case, 89 CF 1252. At that point, consecutive sentences of 12 and 15 years were imposed on two convictions for attempt to aggravate a criminal sexual assault. After those convictions were vacated in 2001, there was the bench trial in 1252. The guilty plea in our case resulting in consecutive sentences of 11 and 14 years, respectively. Defendant entered the cold plea on September 7th of 2001. As our position at that point, he was induced to plead guilty, thinking he would receive substantially less time than he did receive, not just two years less on the aggregate for the consecutive sentences in the two cases. But no one made him any promises that he was going to receive anything less. Not quote unquote promises or guarantees, no. But there is a strong objective basis in this record from the representations of defense counsel, which she testifies to, particularly at the first guilty plea hearing, providing an objective basis for his impressions that he would get substantially less time. Focusing particularly on this, obviously only one of the two cases is before the court at this point. So we're talking about the case in which he received a 14-year sentence after receiving 15 years the first time around. We would submit it's not dispositive that the attorney didn't use the word I promise you or I guarantee you that there is enough objective basis inducing him to enter the plea, and that's what has to be looked at here. However, when he was admonished, I'm sorry. When he was admonished, he was asked if anyone made him any promises or any guarantees. No, he was never asked did anyone make you promises. That's one of the problems with the guilty plea colloquy. He is not asked about promises, and particularly not asked about promises after that. If your honors will recall from the record, there is an interruption or recess for about an hour and a half or two hours in the middle of the guilty plea proceeding. The defendant had reluctance about entering his plea. He was saying he didn't have a lot of memory of what happened 12 years previously, but he was maintaining his innocence, asserting his position was that he had an alibi defense, but they had not been able to locate any witnesses in support of that defense. But he has reluctance to enter the plea because this is not a defendant who is coming into court and saying, yes, I committed the offense. This is a plea being entered by somebody with some reluctance. The trial court recognized that during the plea colloquy and, in fact, interrupted it for him to go talk to the attorney. When they come back on the record, there are no questions about anybody threatening you, were you promised anything for this plea, nor had that been asked beforehand. No, they didn't re-admonish him. But there's plenty of case law that supports not being re-admonished. But they never do the admonishments on the promise and the threats. The 402B admonishments were never there. And that's, I think, you're right. The fact that this is all on one day, I agree this is different from those cases where somebody's relying on admonitions given in a previous proceeding. But in the admonitions on this day, you don't have full compliance with Rule 402B at any point, either before or after that interruption of the proceedings, Your Honor. So the promise question is never asked again. Let me get this straight. It's never asked on that day? Or any other day. Any other time? Any other time. It was never asked? I mean, obviously, the topic is explored at the hearings on the motion to withdraw the guilty plea. But up to and through the entry of the plea, no. No. I thought he was asked about threats but not about promises. He was asked if there's anybody forcing you to plead guilty. Forcing you to plead is there, but promises is not. Okay. In the plea colloquy. There's some cases, Corboy v. Corboy, that talk about, you know, you can't really move to withdraw your plea based upon the advice of an attorney. It estimates what sentence you might get. I mean, how does this differ from that? Well, first of all, Corboy is not a Illinois Supreme Court case. If you look at the Davis case from the Supreme Court, there is this discussion of the concept of subjective impressions, whether or not they have an objective basis. And that's what the focus of our argument here is. I don't think Corboy is necessarily the controlling law, Your Honor. But I do think this goes beyond just the attorney estimating. She gives the defendant her professional opinion is it will be somewhere near the minimum sentence in this particular case. She says several things that lead him to believe that this is going to be near the bottom. She admits that she tells him probation is a reasonable possibility in this case. They talk about the ideal disposition for the defense being getting somewhere near the minimum for the case in which he went to trial with a consecutive term of probation for this case. She said what they were hoping for was to come out with maybe her more realistic assessment was to come out with prison terms near the minimum for both of these. It wasn't her realistic expectation or one of the guarantees that she made that you're probably going to get less than you did before. I'm not sure you can call anything a guarantee here, but yes, she did. She definitely said I think you'll get less than before. If there was a guarantee, that's probably the best guarantee she gave. You're going to get less than you did before. If you want to use the word guarantee, that might come the closest to guarantee. But there are other objective manifestations in this record supporting his impressions. She was hoping they'd both be the minimum. She does tell him, well, you plead guilty in this one. I think you'll get around the minimum in this, and that will mitigate the sentence in the other case. She testified she thought the 15 and 12 that were originally imposed were draconian was the word that she used. Obviously, she thought 27 was draconian. She's not going to think a lot less of 25. She did not. This is a gross miscalculation by the defense attorney of what the consequences of this guilty plea were going to be. Aren't the defendant's impressions and guarantee or promise are a little different? What his impressions are? But the question is whether there's an objective basis for that. And there is in the representations the attorney made to him in this case. No, they may not be a promise. They're not a guarantee. She can't do that. She does not do that. I admit that. But there is the law, such as the Supreme Court Davis case, which is the one cited in the briefs, for the proposition that you look to whether there is an objective basis for the subjective impressions of the defendant. Yes, this defendant was advised by the judge of the possible sentencing range. He knew what the range was. He knew he was facing mandatory consecutive sentences. Obviously, he had begun serving those sentences at one point until it was vacated and he had to come back. Then he came back after they were vacated and he started over again in this particular case. I'm not questioning at all that he knew the potential sentencing range. He knew he was facing up to 30 years since it was two class one convictions in this particular case. So that's not the question. But on this day when he's in there hesitating, reluctant to plead, the attorney talks to him and, after the discussion, decides to go ahead with the plea. And she induces that plea with what I would submit is grossly misestimated, grossly miscalculated as to what the sentencing would ensue from Judge Brown in the trial court in this particular case. And it's her representations to him, as I said, she particularly testifies to those at the first of the two guilty plea hearings that show the inducement for the plea. All right, so excuse me if I sound as if I'm oversimplifying your argument, but the objective basis I hear you saying is that it was a gross miscalculation of what actually occurred at the sentencing. It's a gross miscalculation. No, I think it goes beyond that, Your Honor. Because look at what the crimes were here. These are two violent sexual offenses committed against what I guess were random acts of violence against two women on the streets here in Elgin in this particular case. I don't think that is ever a good impression on the attorney's part. I don't think any experienced public defender looking at these facts is going to say, oh, I think I'm going to get you probation on this, particularly after he'd gone overseas for 10 years, too, even factoring that in. I will point out, Your Honors, the other panel of this court rejected a sentencing argument that was advanced in the first appeal in this case, rejected it fairly out of hand, challenging the 11-year sentence in the other case. This, from a realistic assessment by an experienced public defender, no way this is a minimum or a probationable case. She did not properly assess what the facts facing her client were and the severity of the sentencing consequences that were likely to ensue here. But she did tell him that the court had not given any indication as to what the sentence would be. Correct, correct. There had been, even on the day of the plea, there had been a request for a 402 conference, and the judge declined to – there had been one earlier before the bench trial. He declined to look into that further, and at the first one, he had not tipped his hand. He had not given a number. No, he had not tipped his hand, certainly not given a number. Okay, so I'll get it back to my question, which is that we have a case law saying that an attorney's – and I'm not sure what words to use here. You tell me what words are acceptable. In what situations is the attorney's prediction not going to benefit the defendant if it's off the mark? Do you understand my question? I guess I don't. Judge Burke pointed out that we have case law that says when an attorney makes a prediction of a sentence and it turns out not to be accurate, that's not enough to justify relief. I think there is so much misrepresentation here. And, again, another of the factors here is the context of this with the reluctance to enter the plea. In this particular case, that inducement, her repeated statements pushing the sentence toward the lower end, I think on this record you can say are what induces him to go ahead and complete the entry of the plea after that recess on September 7th, 2009. I want to get back to where we're going to draw the line here. Now, the Supreme Court case – I forgot the name you just said. Davis. Now, what's the objective criteria, Dan, that's at issue there, and what was the result? The objective criteria gives supports an objective basis for his subjective belief. I believe that particular case was a misleading defendant about task eligibility, and the Davis case itself was what was involved. But what I'm saying is the language about the principle of law is you look for objective support. No, I'm with you on that. I'm just trying to figure out how we're going to apply – I'm with you on that. The concept is there. Now, when we have a sentence that turns out to be – two possibilities that were present in this case. One is that it was just never going to happen. An experienced person would not have predicted what she predicted. The alternative is that, you know, maybe it wasn't too bad a prediction, but it didn't turn out to be true. Well, I mean, I certainly disagree. Obviously, in this case, I don't think we can say it wasn't too bad of a prediction. It was a very bad prediction at a minimum in this particular case. But in this particular case, I don't think it was realistic from the get-go. Knowing what he had gotten originally, knowing what the crimes are here, knowing what the state would have available in aggravation, to think that this was going to come out in four or five years on each of the two cases, I think was fairly blind to the realities of the situation. All right. Well, then I hate to say this, but let me put it this way. In every case where a lawyer – now, ha, I mean, the old every case. What are we opening up here? I know you don't like those kind of arguments, but I have to ask you. In every case where an offense attorney just miscalculates or, you know, just is wrong, assuming that you're correct, that it was just not a possibility, it was way off the mark, every one of those cases we're going to – Well, outright wrong goes even a step further in the sense of, like, if the attorney hadn't told the defendant, hey, this has to be consecutive sentences. If you miss the law completely on that kind of thing, yes, I think even under the current law, those kinds of cases are going to win. Right. We're in a realm where, no, we don't have that kind of error where it's outright misadvising about what you're eligible for or what the range is or something like that. All I can say is that, again, referring to the Davis case, it talks to a number of factors about when you withdraw a plea. Look to, is there a defense? Is the defendant maintaining his innocence? Are there misapprehensions of fact or law? Is there misrepresentation by the attorney or someone in authority? We have a conglomeration of several of those factors in this particular case, and that's what we're relying on. Again, the inducement here can be tied to a defendant who is reluctant to enter the plea and is, in fact, maintaining his innocence in the first place, and the objective miscalculations, gross miscalculations in the sentencing, in this particular case anyway, are what led him to go through with or complete the plea. And the guilty plea admonishment, is he asked, are you pleading guilty because you're guilty? No. He does not come out and say, I'm guilty. No, that's not this case. No, but they don't ask him that? I don't know. I don't believe. He's asked, do you want to go through with your guilty plea? But he's not asked the objective statement, are you guilty of this crime? No. He's not asked, are you pleading guilty because you are guilty? No. He's not asked that? No, I do not believe that's anywhere in his plea. Is he supposed to be asked that? No, I don't think he has to be, because you can enter a plea without admitting. There has to be a factual basis, and I'm not questioning there isn't a factual basis here, to which the defense stipulates, essentially. And your argument is that it was a misrepresentation. When you enter an open plea, and the lawyer says to you, you know, enter an open plea because I think this judge will give you probation. Ends up the judge sends you to DOC. Is that a misrepresentation, or is that, with an open plea, just a lawyer giving the advice to the lawyer? I think you have to take into account how bad a recommendation is that on the facts of this particular case. I think this is an extreme case. I do not think that any experienced criminal defense practitioner looking at these facts would have thought this was a minimum case. So the fact that she gave him what you consider bad advice because she underestimated what the judge was going to do, as millions of lawyers do on a daily basis when they take to claiming to enter an open plea. I don't think they do to this degree, Your Honor. This is a much greater degree, and we have a much better record of how it came about in this case than you normally see. And that's just as a matter of law? Or do you guys got some obligation to put up evidence or something that this thing was so far off the marker? Are we supposed to just take as a matter of law, in our own experience, or your statements that this was a ridiculous prediction? Certainly no evidence was put on. And again, I can't make excessive sentence arguments anymore comparing my facts to another case in light of the Supreme Court Fern case. So each case has to be taken on its individual facts from a sentencing perspective. But I think an experienced criminal defense attorney sitting in a courtroom in Kane County would realize this was a case where the sentencing consequences were going to be a lot more than what was estimated. Okay, well, go ahead and wrap up. We'll let you back up. Do you ever address speedy trial issues? Go ahead. It's up to Your Honor. No, go ahead. On the speedy trial issue, to cut it short, on that particular issue, the State and I have not disagreed on the context for the analysis in light of ineffective assistance of counsel. It really all boils down to was there or was there not a meritorious speedy trial issue? A speedy trial motion to dismiss to be advanced in this particular case? And I can see that that comes down to analyzing was that original conviction from 1990 of the jury trial held in absentia void or not? Void versus voidable is really what the whole question comes down to. It is our position that the Supreme Court is essentially three categories of jurisdiction, subject matter jurisdiction, personal jurisdiction, and the other place where jurisdiction can be violated is if a conviction is obtained or a judgment is obtained in violation of statutory requirements. That's the kind we have here. If you look at the case law in this area, I think it's specific. It may be that we have to say that that third area is really confined to criminal cases, but we're here on a criminal case, and that's where the problem in this particular case lies. The prerequisites under Section 115.4.1 of the Code of Criminal Procedure for a trial in absentia were not strictly observed in the trial court. That's why Judge Brown vacated the judgment from the 1990 trial in 2001. That is a determination that the judgment was void because it was not entered in compliance with statutory requirements. There were prerequisites as it related to notice. Notice, correct. You're saying maybe criminal is different than civil, but, of course, under civil, notice, subject matter, personal jurisdiction, I should say, but not notice, it's a voidable order, not a void order, and that's pretty clear. Why wouldn't this really be the same thing? Because it's really just a notice provision. It's not a sentencing provision. Can't we make some distinction here between some of the cases that have held void under, for instance, sentencing provisions? Well, I mean, I certainly think it's those, the sentence voidness cases demonstrate why there has to be this third area of voidness in the criminal law area that's perhaps not there in the civil or even the juvenile area based on the case law that's out there. It's our position that in order for the judge to have the authority to conduct the trial in absentia, there has to have been strict compliance with those notice requirements. There clearly wasn't here, and that's why the judge vacated it, and voidness is the result of that. Whether civilly that would be the same result, I don't know, but in this particular case, in the criminal area, it has to be a result because of the rights of the defendant that are involved. Mr. Lillian, didn't he subject himself to the court when he appeared in court? I said there's, yes, I conceded personal jurisdiction, Your Honor. He appeared at a bond hearing on September 24th, 1989 before he went overseas, yes. What else is there in the criminal context, other than sentencing, where you find this? Where have you seen this where a statute is violated and the conviction is void because of a statutory miscue? Well, there's certainly language out there, you know, in some case law that a charge that doesn't state an offense is void, and that's, the charge is essentially a notice document, and there are cases in the criminal law area saying a charge that the… Well, no, the charge gives the court subject matter jurisdiction. I mean, if the charge is, if there's no, if I file this piece of paper with my scribbles on it, that isn't a charge. That doesn't give the court subject matter jurisdiction over whatever it is. I mean, if the charge is improper, then that's a jurisdictional issue. That's different from what I'm talking about. I'm talking about other than sentencing. Is there anything out there where if you don't follow a statute to the letter on whether it's a notice or something else in the criminal context that the conviction then is void? I guess my response is the cases are not usually, you know, normally whether it's void or not doesn't matter. You know, the case that's the closest to our factual situation is the Ramirez case from the Illinois Supreme Court, but that holds this same kind of error to be reversible error if there was no reason to address a concept such as void was there. So, no, I don't have an example beyond the sentencing area that I can point to, Your Honor. Okay. I'll stop. Okay. Counsel for State, please. Good afternoon, judges. Counsel, may it please the court. People will briefly address the first issue of whether the plea was involuntary due to representations made by counsel. The people submit that the defendant's beliefs were all subjective, and they were not objectively reasonable to rely on counsel's opinions of receiving a lower sentence. The defendant knew the sentencing range. His attorney spoke to him about the sentencing range. The judge spoke to him about the sentencing range. He knew there was no agreement as to the sentence when he went into the plea, and he also knew that there was no indication from the judge of where that sentence would result. Do you agree with counsel's reading of Davis that if a defendant has a subjective manifestation that I'm going to get a lesser sentence and it's supported by objective facts, then we should vacate the sentence? Vacate the plea. Do you agree with that reading? I think the people think the objective facts must be ones of which counsel is mentioning that there would be a viable defense, that there was actually a misrepresentation by counsel. Here there was no misrepresentation by counsel as to the sentence. There was a proper sentencing range. She misestimated. He knew there were fairly large holes in his case due to his own memory, due to the unavailability of witnesses, which I believe was also a problem in the trial in absentia, if I'm remembering the record correctly. And his disposition at the previous trial on the, I believe that was the 1252 offense, and he sat through that trial. It was very hard on the victim. He said it was very hard on him. All of these were factors in which he, which were causing him to decide to plead guilty. It wasn't solely the representation by counsel that you're going to get this minimum sentence. She expressed her hopes and beliefs. The people submit that these are opinions. This is advice. This is not a misrepresentation. Therefore, there was no, it was not objectionably reasonable to rely on her impressions of the case or her estimates. He, as far as the 402B admonishments, as we stated in our brief, there was substantial compliance. It's only to be reversed when there's prejudice to the defendant, when the omission of that part of the admonishment prejudiced him. But here there were no promises. He said counsel did not promise me anything. He never said that counsel threatened him. In fact, he said, I did not feel pressured by counsel to enter this plea. And in light of any omission in the admonishments, it would be harmless error where there were no promises or threats made. As to the speedy trial violation, as the people have set out both in the previous brief and the current brief, the people submit irregardless of whether this is void or avoidable, the time starts when his conviction was vacated. The people aren't able to take any action. The defendant's not able to take any action until that conviction is vacated. They can't start, they can't set a trial date when he's serving time in DOC for the offense. They can't reinstate charges against him for fear of double jeopardy. There's nothing that can be done until that trial date or until that conviction was vacated. Therefore, the people submit it is illogical that any other date be considered for the speedy trial violation. And as that date was May 31st of 2001, only a maximum, I believe, of 100 days, either 99 or 100 days had passed at the time of the plea. So there's not a meritorious claim either statutorily or constitutionally that there was a speedy trial violation. Therefore, there's no ineffective assistance of counsel where there was no legally valid claim to discharge. So if it's void, we don't go back to basically what happened is still viable until the orders are to vacate that? I mean, if it's a void, what happened at the site? The original trial was void and the conviction was void, then that order is, what you're arguing, is it still a valid order until it's vacated? As far as being able to take any further action on it, even defendant, I mean, he could, I assume there could be defendants sitting in jail for which there is a void sentence that they never appeal it and they serve out their sentence. And unfortunately, it may have always been void, but it's served. I'm not sure that can be true. What are you submitting here that this is a voidable sentence? We would submit that it is a voidable sentence. However, irregardless of it's void or voidable, the date of which the speedy trial clock should begin again is the date his conviction was vacated. It would put him in the same category as if he filed a post-trial motion and was granted a new trial or he was successful on an appeal. It would be the date, as far as an appeal goes, it would be the date the mandate is issued and it is redacted. Here it would be this case has now been redacted because it had been, the conviction had been vacated. So the people submit that those are parallel situations and that is why the date of the date his conviction was vacated should be the date that it's used. Does that argument dose the state profiting from it's mistakes? Because the state was the one who set out the faulty notices and is the state profiting from it's mistakes? I think the state did everything it could to give the defendant notice in this case. As it was attached to our brief. But it wasn't certified mail. No, the state's attorney's office sent the defendant certified mail. According to the statute, the clerk had the obligation to send it. Well, but I mean it's the state's obligation as well as the court's to make sure the rules are followed. To make sure that the notice is followed. If you're seeking a trial in absentia from the state's perspective, I mean, you should dot your I's and cross your T's and make sure everything is ready to go. Same thing with the court. I mean, it's really a dual thing. So my question is if in fact the state doesn't do that, or doesn't make sure that the court follows the rules, is the state benefiting from that? Obtaining a void conviction and then basically sitting on it until the guy files a motion to vacate the void conviction? Under these facts, your honor, I don't believe the people sat on this case at all. You had a defendant who left immediately after he was arraigned and stayed in an unextraditable country for 10 years while the people were trying to obtain the defendant again. So I believe that the state is not getting a windfall in this situation because the clerk did not send the notice. And while we are aware that the Supreme Court has held that this notice is mandatory at the time of the defendant's trial in absentia, there was also some divergence in the districts of what kind of notice was apropos for the defendant to receive notice of the trial in absentia. Your point is that regardless of whether it's a void or voidable order, the clock doesn't start to tick until it's vacated. Yes. And what's the difference between void and voidable in your mind? If it's void, aren't you precluded from re-prosecuting it? If the original trial was void, as the defendant points out in his brief, it's like nothing ever happened. So he would be back in the state of prior to the trial in absentia. And the clerk would be running. Is there a point? Is there a point? Yes. So that's the point. If it's void, the clerk will run it because nothing happened. That's their position. That is their position. And the people are submitting that everybody's hands are tied as far as this case goes, regardless of whether it's void or voidable. Regardless of whether everyone's hands are tied, what's the difference between void and voidable? I mean, they have a clear difference between void and voidable. If it's void, as you just pointed out, it's like nothing happened. The guy's in custody. When's the clock, sir? And the clock is running. That's their whole point. If it's void, the clock is running. You said if it's void, we can't do anything. That doesn't answer the question of what's the difference between void and voidable. I mean, they have a difference between void and voidable that decides the case. Their difference is saying that there is no jurisdiction over the defendant. The people submit there is jurisdiction over the defendant. They obtain personal jurisdiction. They obtain subject matter jurisdiction. And this is a speedy trial issue. This is a speedy trial issue. Yeah, okay. I mean, I guess their point is if it's void, the clock is running. And you said if it's void, what? If it's void, the court did not have jurisdiction over the defendant. Ever. Ever. What is it? But the clock is still running then, right? She's saying the clock doesn't run. The clock doesn't run. If there's no jurisdiction over the defendant, the clock cannot be running. Because they have to have jurisdiction over. But they had jurisdiction over before the trial and abstention. Correct. Yes. And then in the trial and abstention, the trial is what's void, not the fact that they had him accustomed before that. They had jurisdiction over him. They just conducted a trial. They're arguing it was void. And you said it doesn't matter if it's void or not. Void or voidable, you say it doesn't matter. And they're saying it makes all the difference in the world if the trial is void. Well, the people are submitting, as we did in our brief, it is voidable. But irregardless, the date when you – If it's voidable, the clock doesn't start running until – Until jurisdiction is obtained over the defendant. Oh, I'm sorry. If it's voidable, the clock does not start running. The people still submit irregardless of whether it's void or voidable. So the clock would not start running until it is vacated and further action can be taken. That's my question. You're saying that there's no difference between void and voidable. In this case, no. That was my question. You see no difference between void and voidable. As far as when the speedy trial clock starts, in this case, no. Okay. Are there any other questions that I can answer for the court? Okay. Thank you. Thank you. I'll take the speedy trial issue first. Void means void ab initio, void from the get-go. It means there's no continuance of the – It means there's no continuance of what was going on in the trial court at that point. If it was void ab initio, the speedy trial term starts to run again when this man is in custody in the state of Illinois. That is on September 17th – Sorry, September 14th, 2000. That's when 120 days started running here. They had run before the court ever entered the order in May 2001, recognizing the voidness of the judgment. The speedy trial term was violated in this case and there was a meritorious issue raised. Your Honor, Justice Burke, I apologize. I did not remember the Rodriguez case that I've got cited in my briefs. Rodriguez is the case I would rely on that is a non-sentencing case to support my argument on the voidness. That is one that involved a transfer from juvenile to adult court that was void. That was not – that was a preliminary to whether the proceedings could occur in the adult court. That's the closest analogy and that's the case we would rely on, as we did in the brief. Again, theoretically that could be seen as a jurisdictional case because whether the adult court had jurisdiction over this juvenile. But no, because the juvenile – the case law out there now says there is only one circuit court that has subject matter jurisdiction over everything. So I do not think that is a no-disjurisdictional case. That was a transfer case. It was a transfer case, yes. And what this court ultimately held was that the transfer was void, so therefore the adult conviction was no good. That's our closest analogy there. Finally, on the first issue, almost the first thing my opponent said when she got up here was it was not objectively reasonable for the defendant to rely on the advice of his counsel. My position is who else is he supposed to rely on? He has this experience, public defender. She's the one advising him. She's the one he's got to rely on. And she states, and I would specifically refer, according to my notes, it's page 1146 of the record in her testimony. It is her professional opinion that if he pleads guilty in case 1482, he will receive a near-minimum sentence. That is the professional opinion that is wrong and is the basis of our whole argument in this case. That's the professional opinion that induced the plea from this reluctant defendant on September 7, 2001. I guess as we stand here right now, Tom, there are probably hundreds or thousands of defendants in courtrooms around the country where lawyers are giving them professional advice or giving them their professional opinion, and they're going to be wrong. So every one of those cases should be vacated? When it's this grossly wrong and when it's a defendant who the judge knows was hesitant to enter the plea in the first place and when the judge doesn't confirm that nothing about this is inducing the defendant after a recess like that, it is the conglomeration of circumstances here. I'm not asking for a general rule that is going to open the floodgates to a lot of other defendants to go back in. It's got to be today. I can't say I won't do that. So for all those reasons, we ask you to vacate the judgment here. All right. Thank you both for your arguments. That is our advisement. Court is actually done for the day. I guess I should have said. Every day.